**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**WILLIAM L. RHODES,**

      **Plaintiff,**

**vs.**                        **Case No. 1:12cv269-CAS**

**CAROLYN W. COLVIN, Acting
Commissioner of Social Security,**

      **Defendant.**

_____/

**<u>MEMORANDUM OPINION AND ORDER</u>**

      This is a Social Security case referred to the undersigned upon consent of the parties, doc. 8, and reference by Senior District Judge Maurice M. Paul.   Doc. 9.   The Court concludes that the decision of the Commissioner should be affirmed.

**I.  Procedural History of the Case**

      On September 25, 2008, Plaintiff, William L. Rhodes, applied for a period of disability and Disability Insurance Benefits (DIB) pursuant to Title II Social Security Act (Act) and also applied for Supplemental Security Income (SSI) benefits pursuant to under Title XVI of the Act for a period of disability with an alleged onset date of November 15, 2007.   R. 16, 146-50.   (Citations to the Record shall be by the symbol "R". followed by a page number that appears in the lower right corner.)

      Plaintiff's claims were denied initially on January 6, 2009, and upon reconsideration on July 28, 2009.   R. 16.   On September 4, 2009, Plaintiff requested a

hearing and filed a pre-hearing brief on February 4, 2011.   R. 16, 208-13.   On February

16, 2011, an evidentiary video hearing was conducted by Administrative Law Judge

William H. Greer who was in Jacksonville, Florida, and the Plaintiff appeared in Ocala,

Florida.   R. 16.   Plaintiff was represented by Frances Brooks, a non-attorney

representative, Plaintiff's prior representative, from the law firm of William G. McLean, Jr.

R. 16.   Plaintiff testified.   R. 16, 33-50, 52-53.   David Jackson, Ph.D., testified as an

impartial vocational expert.   R. 16, 50-51, 53, 127-33 (Resume).

On March 14, 2011, the ALJ entered a decision concluding that Plaintiff is not

disabled.   R. 25.   On August 30, 2010, Plaintiff's current representative filed a request

for review of the ALJ's decision that was denied on October 23, 2012.   R. 12, 215-20.

The ALJ's decision stands as the final decision of the Commissioner.

On November 12, 2012, Plaintiff filed a Complaint in this Court requesting judicial

review of the Commissioner's final decision.   Doc. 1.   Both parties filed memoranda of

law, docs. 16 and 17, which have been considered.

## II.  Findings of the ALJ

The ALJ made several findings relative to the issues raised in this appeal:

1. "The claimant meets the insured status requirements of the Social Security Act through December 31, 2009."   R. 18.

2. "The claimant has not engaged in substantial gainful activity since November 15, 2007, the alleged onset date."   *Id.*

3. "The claimant has the following severe impairments: pineal cyst, hypertension, headaches, laceration to the head, organic mental disorder, and a substance addiction disorder."   *Id.*

4. "The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404,

Subpart P, Appendix 1." *Id.* The ALJ considered the listings under sections 1.00 (musculoskeletal system) and 12.00 (mental disorders). *Id.* at 19. Relevant here, the ALJ found that Plaintiff's mental impairment did not meet or medially equal the criteria of Listings 12.02 and 12.09. The ALJ found that Plaintiff had *mild* restrictions in activities of daily living; *mild* difficulties in social functioning; *moderate* difficulties with regard to concentration, persistence or pace; and *no* episodes of decompensation, which have been of extended duration. R. 19.[1]

5. "[T]he claimant has the residual functional capacity [RFC] to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant is capable of performing simple, repetitive tasks, with moderate limitations in concentration, persistence or pace." R. 20.

6. "The claimant is capable of performing past relevant work as a smoked meat preparer, tow truck operator, auto self service station attendant, and glazier. This work does not require the performance of work related activities precluded by the claimant's [RFC]." R. 24.

7. "The claimant has not been under a disability, as defined in the Social Security Act, from November 15, 2007, through the date of this decision." *Id.*

## III. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant

---

[1] To meet Listing 12.02 (organic mental disorders), Plaintiff must satisfy the preamble and the requirements of paragraphs A and B or paragraph C. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02. The preamble to Listing 12.02 requires "the presence of a specific organic factor judged to be etiologically related to the abnormal mental state." *Id.* No physician attributed Plaintiff's brain cyst to loss of cognitive function. Medical records indicate that the cyst was stable and that Plaintiff had normal mental functioning when sober. Even if Plaintiff could meet the requirements of the preamble and paragraph A, the record supports the ALJ's findings that Plaintiff does not have any marked restrictions and no repeated episodes of decompensation and, as a result, Plaintiff does not meet the paragraph B criteria. *See* Doc. 16 at 14 for Plaintiff's reference to Listing 12.02A.

evidence as a reasonable person would accept as adequate to support a conclusion."

Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord

Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual

findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284

F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[2]

"In making an initial determination of disability, the examiner must consider four

factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining

physicians; (3) subjective evidence of pain and disability as testified to by the claimant

and corroborated by [other observers, including family members], and (4) the claimant's

age, education, and work history.'" Bloodsworth, 703 F.2d at 1240 (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the

claimant is not only unable to do past relevant work, "but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an

"inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or

---

[2]  "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 416.909 (duration requirement).

Both the "impairment" and the "inability" must be expected to last not less than 12 months.

Barnhart v. Walton, 535 U.S. 212 (2002).

The Commissioner analyzes a claim in five steps. 20 C.F.R.

§§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the

application for benefits. A positive finding at step three results in approval of the

application for benefits. At step four, the claimant bears the burden of establishing a

severe impairment that precludes the performance of past relevant work. Consideration

is given to the assessment of the claimant's RFC and the claimant's past relevant work.

If the claimant can still do past relevant work, there will be a finding that the claimant is not

disabled. If the claimant carries this burden, however, the burden shifts to the

Commissioner at step five to establish that despite the claimant's impairments, the

claimant is able to perform other work in the national economy in light of the claimant's

RFC, age, education, and work experience. Phillips, 357 F.3d at 1237; Jones v. Apfel,

190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.   Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that he is disabled, and consequently, is responsible for producing evidence in support of his claim.   *See* 20 C.F.R. §§ 404.1512(a); 416.912(a); Moore v. Barnhart, 405 F.3d at 1211.   On the other hand, an ALJ has a clear duty to fully and fairly develop the administrative record.   Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995); 20 C.F.R. §§ 404.1512(d), 416.912(d). The question here is whether there are "the kinds of gaps in the evidence necessary to demonstrate prejudice" to Plaintiff.   Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997).

## IV.  Legal Analysis

### A.  Substantial evidence supports the ALJ's determination that Plaintiff is not disabled and not entitled to a remand to more fully develop the record.

#### 1.  Record Evidence

Plaintiff contends that the ALJ committed reversible error because he failed to fully and fairly develop the record regarding Plaintiff's I.Q. before and after his organic mental disorder and the psychological abnormalities associated with a dysfunction of the brain.   Doc. 16 at 1.   Plaintiff relies on three pieces of evidence: (1) a finding that he has a pineal cyst in his brain that was first discovered in October 2008, doc. 16 at

6-7, R. 237, 390; (2) a June 23, 2009, consultative psychological evaluation conducted by Linda Abeles, Ph.D., who recommended that Plaintiff be referred for further evaluation and that all medical and school records be obtained, doc. 16 at 8-9, R. 306-08; and (3) a portion of Plaintiff's hearing testimony, doc. 16 at 9-11, R. 33-35. Plaintiff does not disagree with the factual findings derived from the medical and other evidence submitted to the ALJ during the evidentiary hearing, only the conclusions reached by the ALJ.    Doc. 16.    The Commissioner argues that substantial evidence supports the ALJ's disability determination and that the ALJ did not err when he decided the case on this record.    Doc. 17.

Medical and other evidence considered by the ALJ is set forth in the ALJ's decision at pages 20 through 24 and is incorporated herein.    R. 20-24.    Part of Plaintiff's hearing testimony is summarized by the ALJ and is also incorporated herein. R. 20-21.

After determining that Plaintiff has not engaged in substantial gainful activity since December 28, 2006, the ALJ found that Plaintiff has several severe impairments. R. 18.    The ALJ discussed the severity of these impairments. R. 18-20.    The ALJ then determined Plaintiff's RFC after reviewing the record evidence.    R. 20-24.

On October 10, 2008, Plaintiff presented to the emergency department of NFRMC complaining of headaches.    R. 21, 234-40.    He was alert and in no acute distress. Plaintiff had ETOH on his breath, but did not appear intoxicated.    Plaintiff underwent a CT scan of his brain without contrast.    R. 21, 237, 390.    The findings in the preliminary

radiology report were no acute intracranial findings and a 15mm pineal cyst. The visualized paranasal sinuses and mastoid air cells were clear. There was no hemorrhage, edema, mass effect or midline shift; ventricles and sulci were normal for age. R. 390. This CT scan was also independently reviewed in the emergency department with no acute changes noted; a 15mm pineal cyst was noted. R. 237. Plaintiff was admitted for probable foot infection, although Plaintiff stated he was there for his headaches not his foot. He was willing to take oral antibiotics for his foot and reported improvement in his headache after taking Percocet. *Id.* There is a note for Plaintiff to follow-up with Anne Rottman, M.D., neurology, on Monday even if well. R. 238. (It does not appear that Plaintiff followed-up with Dr. Rottman.) The clinical impressions were headache and cellulitis of the right foot. R. 239. A neurological examination indicated Plaintiff was oriented x3; had a normal mood/affect; normal speech and cranial nerves; no motor and sensory deficit, and no cerebellar findings. R. 237. Plaintiff was discharged home in stable condition. R. 234, 239.

On November 8, 2008, Plaintiff presented to the emergency department of the North Florida Regional Medical Center (NFRMC) complaining of an injury to his nose, head and forehead, and also that he had had a headache. R. 21, 226-33. Plaintiff complained of mild pain and stated that he was hit on the head with an unknown object and bit on the end of his nose by a person. He reported being a smoker and using alcohol, but denied drug use. The clinical impressions were superficial laceration, human bite to the face, possible minor head injury, and the clinical picture did not suggest cerebral contusion, intracranial hemorrhage, subdural hematoma, subarachnoid

hemorrhage or epidural hematoma, nor a spinal injury.   Plaintiff was discharged home in good condition.   R. 239.   A new CT scan of the head without contrast showed no bleed or extraaxial fluid; no mass effect, midline shift or effacement of the cortical sulci; the ventricles were normal in size and the basilar cistern was patent; a pineal cyst measuring 13mm in AP dimension was noted; the paranasal sinuses were clear; and no depressed fracture noted.   These results were "compared to 10/10/08, 10/9/06."   The impressions were: no acute intracranial findings and stable pineal cyst.   R. 21, 242.   It appears that the pineal cyst reduced from 15 mm to 13 mm in one month.   *Compare* R. 237 and 390 *with* R. 242.   (Plaintiff also had a CT of the cervical spine with sagittal and coronal reformations.   The impression was no fracture.   R. 241.)

On January 6, 2009, Steven Wise, Psy.D., completed a Psychiatric Technique (PRT) finding no medically determinable impairment.   R. 23, 251.

In April 2009, Plaintiff presented to the emergency department at Shands HealthCare at Starke complaining of groin pain (urinary/testicular issues).   R. 273. Radiology reports appear to be normal and no cause for abdominal pain noted.   Normal chest and abdomen examinations are noted.   R. 280-94.   Plaintiff was to follow-up with several named doctors and he was discharged home with some medications.   R. 274, 293.   It appears the diagnosis was epididymitis.   R. 293. (It does not appear Plaintiff followed-up with the named doctors.)

On May 7, 2009, Plaintiff presented to the emergency department at NFRMC complaining of testicular pain and headache.   R. 336-38.   Plaintiff reported he consumed five beers, but denied drug use.   *Id.*   On examination, Plaintiff appeared alert

and not to be in distress; oriented x3; and smelled strongly of ETOH.   No functional

impairments were noted.   R. 338.

On June 20, 2009, Plaintiff attended a consultative examination with Eftim Adhami,

M.D., in connection with his applications for benefits.   R. 22, 303-04.   Plaintiff

complained that he had non-stop headaches for three months and headaches for the past

two years and before that; some numbness in his left arm; cysts in his scrotum and one in

the kidney; constant lower back pain; and complained that he could not sit, stand, or walk

for long periods of time.   R. 303.   Dr. Adhami mentioned that a brain scan and an MRI

were performed "and they found a cyst; he reports that he needs to see a specialist."   *Id.*

(As noted above, it does not appear Plaintiff followed-up with

Dr. Rottman, a neurologist, in October 2008.   R. 238.)   Plaintiff reported no drug or

alcohol abuse.   *Id.*   On physical examination, Plaintiff had normal cerebellar signs,

normal sensation, full muscle strength, no atrophy, no history of seizures, and no

abnormal movements.   He had full range of motion of his back, although Plaintiff

reported some pain in deep flexion.   *Id.*   He had normal mental status, mood, judgment,

and expression.   R. 303-04.   Dr. Adhami noted that Plaintiff understood questions and

answered appropriately.   R. 304.   Dr. Adhami diagnosed Plaintiff with headaches,

mostly likely due to untreated hypertension, although he noted that he "did not have the

records of the alleged brain cyst" and added that "the MRI results must be read to check

for cysts that block the cerebrospinal fluid."   *Id.*   He also diagnosed Plaintiff with

hepatitis C without signs of liver function decompensation; lower back pain due to strain of

arthritis, which x-rays can clarify; mild obesity; and records indicating testicular

hydroceles and epidydimal cysts of benign nature.   *Id.*   He did not opine that Plaintiff

had any work-preclusive functional limitations.   R. 303-04.

On June 23, 2009, Plaintiff attended a consultative examination with Linda Abeles,

Ph.D.   The following is the ALJ's summary of Dr. Abeles' report.   R. 22-23, 306-08.

> In terms of the claimant's alleged organic mental disorder and substance addiction
> disorder, on June 23, 2009, Linda Abeles, Ph.D., a licensed psychologist,
> evaluated the claimant for a general clinical evaluation with mental status to
> assess his level of functioning.   The claimant reported to Dr. Abeles that he was
> suffering from cysts on his kidney, "down below," and in his brain, which caused
> him to have memory problems and headaches.   Dr. Abeles noted that records
> indicated that the claimant had previously reported such symptoms in 2006 and he
> had a "negative CT scan."   Additionally, in October of 2008, emergency records
> diagnosed the claimant with a headache but it was noted that he was not being
> followed by a physician, nor was he taking any type of medication.   The claimant
> further described to Dr. Abeles his daily activities included going to the public
> library and watching television.   The claimant reported that he had daily contact
> with family members and he was also friendly with a neighbor, occasionally
> assisting him with lawn work.   The claimant further reported that he was capable
> of making simple meals, including eggs.
> Dr. Abeles' clinical impressions noted that the claimant had a valid driver's license,
> he presented as well nourished with a ruddy complexion, and it was noted that his
> fingernails were dirty.   Dr. Abeles noted that there were no visible physical
> deformities and that his gait appeared to be within normal limits.
> Dr. Abeles noted that the claimant was oriented to all spheres but his judgment
> abilities seemed compromised, verbal reasoning abilities appeared compromised,
> and his immediate recent memory abilities appeared decreased.   Dr. Abeles
> further noted that there was no current indication of a psychotic or thought
> disorder.   Dr. Abeles diagnostic impressions including rule out cognitive disorder,
> rule out mental retardation, and he had a global assessment of functioning (GAF)
> score of 50, or according to the Diagnostic and Statistical Manual of Mental
> Disorders-Fourth Edition, the claimant had serious symptoms or any serious
> impairment in social, occupational, or school functioning.
> Dr. Abeles noted that upon evaluation, the claimant's presentation suggested
> psychological decompensation but she recommended that he be referred for
> further evaluation (Exhibit 6F).

R. 22-23; *see* R. 306-08.   In addition, Dr. Abeles stated that "substance abuse or arrests

is denied" and that Plaintiff "denies a history of alcohol or illicit drug abuse."

R. 306-07.   Dr. Abeles could not assess firm diagnoses for Plaintiff, except for diagnostic

impressions including ruling out cognitive disorder and mental retardation, Plaintiff's

reports of cysts in the kidney and brain, unemployment, and a reference to a GAF score of

50, but no assessment of any specific functional limitations.[3]   Plaintiff also reported a

"lack of access to medical care," but no specifics are mentioned.

R. 308.

On July 24, 2009, Angeles Alvarez-Mullin, M.D., completed a PRT.   R. 23,

321-33.   In his Consultant's Notes, Dr. Alvarez-Mullin summarizes information reviewed

from 2008 and 2009.   R. 333.   He opined that Plaintiff "does have some difficulty with

memory and concentration.   Etiology unknown, certainly headaches can be a factor.   It

---

[3]   The American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) (4th Ed. Text Revision 2000), includes the GAF Scale that is primarily used by mental health practitioners.   The GAF Scale is used to report "the clinician's judgment of the individual's overall level of functioning" (with regard to only psychological, social, and occupational functioning) and "may be particularly useful in tracking the clinical progress of individuals in global terms, using a single measure."   *See* DSM-IV-TR 32-34.   The GAF scale is divided into 10 ranges of functioning, each with a 10-point range in the GAF scale.   *Id.   See* Nichols v. Astrue, Case No. 3:11cv409/LC/CJK, 2012 U.S. Dist. LEXIS 119347, at *26-29 (N.D. Fla. Aug. 7, 2012) (discussing GAF scale).   A GAF scale rating of 41-50 is indicative of serious symptoms or any serious impairment in social, occupational or school functioning.   *Id.*   A GAF scale rating of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.   *Id.*   The "Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'"   Wind v. Barnhart, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (citing 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)).   In the Fifth Edition of the *Diagnostic and Statistical Manual of Mental Disorders* (DSM-5) (5th Ed. 2013), "[i]t was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice.   In order to provide a global measure of disability, the WHO Disability Assessment Schedule (WHODAS) is included, for further study, in Section III of DSM-5 (see the chapter "Assessment Measures")."   DSM-5 at 16.

would not appear that his memory is as impaired as not being able to remember family members when he is actually capable of fixing cars, prepare meals, do house improvements and other functions.   Refer to MRFC."   *Id.*   He further opined that Plaintiff had mild difficulties of activities of daily living and maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation, each of extended duration.   R. 331.   Dr. Alvarez-Mullin stated under "medical disposition(s)" that a RFC assessment was necessary and further noted: coexisting non-mental impairment(s) that requires referral to another medical specialty and that this medical disposition is based on Listing12.02 organic mental disorders. R. 321; *see* R. 23.

On the same date, Dr. Alvarez-Mullin also completed a mental RFC assessment. R. 23-24, 317-20.   He opined the Plaintiff appeared capable of carrying out simple instructions; his attention and concentration appeared adequate to complete simple and routine tasks within a schedule; he would be able to maintain a work routine independently; that is interpersonal skills seemed to be adequate; he would be able to identify usual work-related hazards and take appropriate precautions; and he "[c]ould benefit from an evaluation to assess his assets as well as barriers" regarding substantial gainful activity.   R. 319; *see* R. 23-24.

The ALJ accorded significant weight to Dr. Alvarez-Mullin's "opinion and findings because he is an acceptable, medical source opinion whose findings are supported by the overall evidence of record (Exhibits 3F, 5F, 6F, 10F).   Therefore, the [ALJ] adopted Dr. Alvarez-Mullin's functional limitations above and his mental [RFC] assessment."

R. 24.

On July 22, 2009, John A. Dawson, M.D., completed a physical RFC assessment. R. 22, 309-16.   He reviewed the medical evidence, including Plaintiff's headaches, the October 2009 [sic] report of a pineal cyst, and physical examinations, *see* R. 310, 314, and opined that Plaintiff could occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk and sit about six hours in an eight-hour workday; and unlimited push and/or pull, other than as shown for lift and/or carry.   R. 22, 310.   He also found Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations.   R. 311-13.   The ALJ accorded "significant weight to Dr. Dawson's opinion because he is an acceptable, medical source whose findings are consistent with the overall evidence of record (Exhibits 1F, 5F, 10F, 12F).   Therefore, the [ALJ] adopt[ed] Dr. Dawson's assessment in the RFC delineated above."   R. 22.

On July 27, 2009, Plaintiff presented by ambulance to NFRMC and was admitted for possible seizure, an altered mental state, with a principal diagnosis of drug abuse NEC unspecified, secondary to alcohol abuse unspecified, tobacco use disorder, hypertension NOS, and personal history for other specified infections and parasite disease.   R. 22-23, 339-40.   Triage notes indicate that Plaintiff had heavy alcohol use and his last drink was hours prior to his arrival.   No functional impairments were noted.   R. 342, 345, 352. Another patient note stated that Plaintiff

> drank 8 beers today, complaining of a headache.   EMS was activated by his family for mental status changes, questionable seizure, seemed confused. Urinary drug screen is positive for THC.   His blood alcohol level is 313.   The patient is awake, follows commands, answers questions, complaining of a frontal headache.   No other symptoms.

R. 357.   A social history states that Plaintiff "abuses alcohol and street drugs."   *Id.*   A preliminary radiology report of a CT of Plaintiff's brain indicated that "no acute intracranial abnormalities seen" and there is no mention of a cyst.   R. 360; *compare with* R. 242 (11/08/2008 CT scan of Plaintiff's brain) and R. 237, 390 (10/10/2008 CT scan of Plaintiff's brain).   The assessments were poly-substance abuse, alcohol abuse and intoxication, and smoker.   R. 358, 366.   Another clinical impression described acute mental status change, alcohol intoxication, possible seizure, although the "[c]linical picture does not suggest cerebrovascular accident, transient ischemic attack, meningitis, epidural hematoma or subdural hematoma," or "subarachnoid hemorrhage, intracranial hemorrhage, urinary tract infection or pneumonia."   R. 355.

After summarizing the July 27, 2009, medical records from NFRMC, the ALJ stated:

> Based on a review of all the evidence in the file, the undersigned concludes that the claimant's alcohol and drug abuse greatly exacerbates his alleged disabling conditions and that if he had stopped drinking alcohol at the time of his alleged onset date, there would have been significant improvement in his medical conditions.   However, since it is determined that the claimant is not disabled, the issue whether DA&A is "material" to disability, need not be addressed.

R. 23.

The July 27, 2009, records from NFRMC appear to be the last in the record reflecting any medical evaluation and treatment of Plaintiff, except for a one-page summary of Plaintiff's recent medical treatment stating that he had been to the Alachua County Health Department and Putnam Medical Center and treated at an emergency room when Plaintiff "broke both legs."   No dates of treatment are provided.   R. 43-44, 204; *see* R. 195-99 (Disability Report (9/26/2009).   Plaintiff's representative provided the

ALJ with a brief on or about February 8, 2011, prior to the hearing, and mentioned that on

July 19, 2010, Plaintiff

> first reported to the Alachua County Health Department for treatment of chronic headaches, hypertension, and urinary difficulty. Claimant reports that he has had chronic severe headaches for over three years, brain, renal and testicular cysts causing claimant pain [  ] his abdomen and groin pain. Claimant also reports continued difficulty urinating. Claimant was given a referral to social services for MRI of the brain, prescription for headaches, and told to follow up in 2 weeks. Health department records reveal claimant to be a no show for numerous follow up appointments.

R. 209-10. There is a "Note" section in this brief stating, in part, that Plaintiff "has been

unable to afford any further specialized care for his medical conditions, despite ongoing

severe pain and dysfunction. He states that he has not even been able to get to the

Health Department for follow up care for lack of transportation." R. 210.

## 2. Hearing

At the beginning of the hearing, the ALJ asked Plaintiff's representative if "there's a

smell of alcohol on [Plaintiff's] breath" and she responded "I do smell a little your honor."

R. 33. Plaintiff testified he is married but separated, and he lives with his caretaker. *Id.*

Plaintiff thinks he completed the eighth or ninth grade. R. 34. He does not know if he

can read a newspaper, although he used to be able to read one. R. 34-35. Plaintiff

described himself as working in "mechanics." R. 36. He feels he is unable to work

because his back hurts and has headaches. R. 37. He did not remember what his

doctor told him about the headaches that started when he hurt his back in 1997. R.

37-38. He "won't take pills" for his back or headaches. He feels they are poison. R.

38-39. He does not want pills; he wants a doctor to help him with his head. R. 39.

Plaintiff stated he had cysts in his brain, kidney, and in his groin.   R. 40.   He was bothered by the lights during the hearing.   When home, he stays in bed and paints the lights "to get away."   R. 41.   Plaintiff stated he did not drink often and is not an alcoholic, but does "drink beer to relax [himself]."   R. 42.   He stated that an orthopedic said he had osteoporosis--he wants a regular doctor.   R. 43.

Plaintiff was in a wheelchair during the hearing.   Approximately three months prior to the hearing, he explained he was walking across the yard when his "right leg broke under [him] for no reason whatsoever."   A day and a half later, he walked across the yard again and his left leg broke" and that is when the orthopedic told him he had osteoporosis. *Id.*   He said he went to the hospital; his representative said "[t]hey're in the Putnam hospital medical records," and Plaintiff said Bradford County the first time and Alachua County the second time (for the left leg).   R. 44.   The ALJ advised he did not have the records and the representative stated she would send them to the ALJ.   The ALJ stated these records would be added "to the record post hearing." *See* R. 204, 209-10.   The Plaintiff then stated that he "ain't got two broken legs" and his representative stated "[t]hey have him in boots right now, your honor, two boots on his legs."   R. 44.   Plaintiff explained his prior work.   R. 44-50.

Dr. Jackson testified as a vocational expert and discussed Plaintiff's past relevant work.   R. 24, 50-51, 53.

The ALJ summarized a portion of Plaintiff's hearing testimony, R. 20-21, and gave "some weight to [Plaintiff's] hearing testimony but note[ed] inconsistencies with his

testimony and the overall evidence of record that reflects negatively on his credibility as a whole." R. 21.

> In particular, the claimant appeared intoxicated at his hearing at 9:00 a.m., but then he subsequently indicated that he drank beers often to relax but stated that he was not an alcoholic. Additionally, the claimant stated that he did not take "pills" or medication because he felt them to be poisonous medications, which suggests that the claimant has not been entirely compliant in taking prescribed medications, which suggests that the symptoms may not have been as limiting as the claimant has alleged in connection with this application. After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment.

*Id.*

### 3. Plaintiff's Argument

Plaintiff emphasizes the report of one-time consultant/examiner Dr. Abeles and, in particular, her diagnoses and GAF assessment. R. 306-08. Dr. Abeles was a consulting examiner, not a treating physician, and thus her opinion is not entitled to controlling weight under the Commissioner's regulations. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Instead, agency regulations provide that the assessment of a consulting examiner will be evaluated according to a number of factors, including its consistency with the record as a whole and the extent to which the source presents medical evidence to support the opinion. *See* 20 C.F.R. §§ 404.1527(c)(3), (4), 416.927(c)(3), (4).

It appears that Plaintiff did not report his drug and alcohol use to Dr. Abeles, as he denied a history of alcohol or illicit drug abuse. R. 306-07. The record indicates that Plaintiff abused alcohol and other substances during the relevant period. A little over a

month after Dr. Abeles' examination, Plaintiff presented to the emergency department at NFRMC for an altered mental state secondary to drug and alcohol abuse.   R. 339-40. He smelled of alcohol, tested positive for THC, admitted to abusing street drugs, consumed eight beers prior to his admission, and had a blood alcohol level of 313.   R. 342, 345, 354, 357-58.   He was diagnosed with poly-substance abuse, alcohol abuse, and intoxication.   R. 358, 366.   During prior emergency department visits, Plaintiff presented to other health care personnel smelling of alcohol.   R. 237, 338.   As noted by the ALJ, Plaintiff "appeared intoxicated at his hearing at 9:00 a.m."   R. 21.   The ALJ, unlike Dr. Abeles, had the benefit of this additional evidence to inform his assessment. The ALJ reasonably concluded that Plaintiff's drug and alcohol use exacerbated his symptoms.   R. 23.

Further, "the ALJ has the ultimate responsibility to asses a claimant's [RFC]". Carson v. Comm'r Soc. Sec. Admin., 300 F. App'x 741, 743 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. §§ 404.1513(c), 404.1527, 404.1545, 404.1546(c)).   A statement by a physician that a claimant is "'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that [the claimant is] disabled."   20 C.F.R. §§ 404.1527(d)(1), 416.927(d)1.   Under the regulations, the ALJ "will not give any special significance to the source of the opinion," on the issue of determining a claimant's RFC. 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); Social Security Ruling (SSR) 96-5p.

Notwithstanding, Drs. Dawson and Alvarez-Mullin opined that Plaintiff could perform work activities despite his cyst.   R. 317-19, 322, 333.   Although the ALJ was not bound by the findings made by State agency medical or psychological consultants, they

are highly qualified experts in Social Security disability evaluations.   *See* 20 C.F.R. §§ 404.1527(e)(2)(1), 416.927(e)(2)(i).   Here, the ALJ explained that these opinions were consistent with the evidence of record.   R. 19, 24.

Further, the lack of functional limitations supports the ALJ's assessment that Plaintiff could perform work activities.   The record demonstrates that Plaintiff had adequate cognitive abilities.   Diagnostic tests of Plaintiff's brain (three CT scans) show that Plaintiff had no acute intracranial findings or abnormalities or cerebral damage. R. 237, 242, 360, 390.   The physicians who performed the brain diagnostic tests did not attribute the condition to a cognitive impairment and did not recommend more intensive follow-up.   Despite Plaintiff's reports of disabling concentration and memory limitations, he did not seek treatment for a mental health condition.   It appears that when relatively sober after an alcohol-related event, Plaintiff had normal mental status functioning, mood, judgment, and expression, understood questions and answered them appropriately.   R. 229, 237, 270, 303.   Plaintiff also completed tasks such as car repairs and home improvement projects.   *See, e.g.*, R. 167, 189-90.

Plaintiff's alternative contention, that the ALJ was required to refer this matter to a medical advisor for further review before making a disability determination, is rejected. The medical record indicates that Plaintiff was treated mainly on an emergency basis. He did not receive regular medical treatment from any health care provider.   At best, Plaintiff sought and received irregular medical assistance and usually on an emergency basis.   No medical source has opined that Plaintiff's headaches and other, albeit severe, impairments are so limiting that Plaintiff cannot work.   <u>Young v. Apfel</u>, 221 F.3d 1065,

1069 (8th Cir. 2000) ("We find it significant that no physician who examined Young submitted a medical conclusion that she is disabled and unable to perform any type of work." (citation omitted)). As noted above, aside from some references to Plaintiff breaking his legs three months or so prior to the hearing and being treated, *see* R. 44, 204, 209-10, the last patient treatment notes are from NFRMC in July 2009. R. 339-83. Although Plaintiff stated several times during the hearing that he wanted a doctor and did not want to take pills and Plaintiff's representative stated Plaintiff has been unable to afford any further specialized care and was unable to access the health department for follow-up care due to lack of transportation, it does not affirmatively appear he attempted to seek out alternative transportation services or low-cost or free health care from a health care clinic, other than some reported visits to the health department, or otherwise follow-up with physicians after emergency department visits or that his purported inability to pay deprived him of any needed health care services. *See* Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005); *see also* Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) ("[F]ailure to seek medical assistance . . . contradicts [ ] subjective complaints of disabling conditions and supports the ALJ's decision to deny benefits." (citation omitted)).

The ALJ gave some weight to Plaintiff's hearing testimony, but noted inconsistencies with his testimony and the overall evidence of record that reflected negatively on his credibility. R. 21. The ALJ is entitled to analyze a claimant's credibility based upon the claimant's demeanor at the hearing. *See* Norris v. Heckler, 760 F.2d 1154, 1158 (11th Cir. 1985) (explaining ALJ may also consider the claimant's

"appearance and demeanor during the hearing" as a basis of credibility, although he cannot weigh it above objective medical evidence).

Finally, the ALJ was not required to further develop the record before reaching his conclusion that Plaintiff was less impaired than he claimed. "Under the social security regulations, the ALJ may order additional consultative examinations if the medical evidence submitted by the claimant does not provide enough information about an impairment to determine whether the claimant is disabled." <u>Salazar v. Comm'r of Soc. Sec.</u>, 372 F. App'x 64, 67 (11th Cir. 2010) (unpublished) (citing 20 C.F.R. § 416.917). But the ALJ "is not required to order additional examinations if the evidence in the record is sufficient to allow him to make an informed decision." *Id.* (citing <u>Ingram v. Comm'r of Soc. Sec.</u>, 496 F.3d 1253, 1269 (11th Cir. 2007)).

On this record, there are not the kinds "of gaps in the evidence necessary to demonstrate prejudice" to Plaintiff. <u>Graham v. Apfel</u>, 129 F.3d at 1422. Substantial evidence supports the ALJ's determination that Plaintiff is not disabled and no further development of the record is required.

**V. Conclusion**

Considering the record as a whole, the findings of the ALJ are based upon substantial evidence in the record and the ALJ correctly followed the law. Accordingly, pursuant to 42 U.S.C § 405(g), the decision of the Commissioner to deny Plaintiff's application for Social Security benefits is **AFFIRMED.** The Clerk is **DIRECTED** to enter judgment for the Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on August 21, 2013.


**s/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**